# EXHIBIT 1

56. Ultimately, Ms. Nuckolls secured the services of Daryl DeBow, a licensed polygrapher with Nova Poly and with whom she was familiar with as a result of her contacts with other law enforcement agencies in Loudoun County. She advised Mr. DeBow of the 'allegations' against Officer Fraley and of her desire for the examination to produce a report reflecting some indicia of deceptiveness.

57. Mr. DeBow agreed to participate in the Fraley Investigation. He further agreed to produce a report reflecting the desired finding of deceptiveness so requested by Ms. Nuckolls, even if doing so would ultimately require him to issue a report inconsistent with the actual test results. Upon information and belief, it is understood that Mr. DeBow's assent to these actions were, in part, a *quid pro quo* byproduct of a sexual relationship he had with Ms. Nuckolls.

58. Mr. DeBow and Nova Poly are nongovernmental entities that provided a service to the Town, at the behest of Ms. Nuckolls and with Mr. Vanegas' approval, in exchange for which they received monetary compensation. As such, the Procurement Act applied to the acquisition of Mr. DeBow and Nova Poly for the contracted-for polygraph examination of Officer Fraley. However, the Town, by and through the actions of Mr. Vanegas and Ms. Nuckolls, failed or refused to comply with several provisions of the Procurement Act, including but not limited to the failure to issue a public notice of the Town's contract for a polygrapher and lack of any competitive negotiation or sealed bidding process.

60. Notwithstanding, now having secured Mr. DeBow's commitment to assist in the Fraley Investigation, on the evening of the day in which Officer Fraley went on bereavement leave, Ms. Nuckolls advised Officer Fraley that she had "carved out time" for him to meet with her at 11:00am on October 12, 2017 at the Town Hall (the "Town Hall Meeting"). **See email from Nuckolls to Fraley attached hereto as Exhibit 11.** Officer Fraley was still unaware of the ulterior motives of Ms. Nuckolls and Mr. Vanegas and agreed to come in during his bereavement leave to meet for what he understood to be a simple follow-up to their October 6, 2017 conversation pertaining to Sergeant McDaniel's misconduct.

62. Officer Fraley appeared as scheduled for the Town Hall Meeting, still expecting the meeting to be a follow-up to the earlier meeting regarding Sergeant McDaniel's misconduct. However, upon entrance, Officer Fraley was immediately advised that the true purpose of the meeting regarded the PPD internal affairs investigation against him. Present at the meeting were Ms. Nuckolls, Sergeant McDaniel, and Mr. DeBow.

63. Ms. Nuckolls and Sergeant McDaniel provided Officer Fraley with a copy of the Investigation Notice. **See Notification of Investigation attached hereto as Exhibit 13.** Officer Fraley was then directed to surrender his Department-issued firearm to Sergeant McDaniel.[2] Mr. DeBow performed a search of Officer Fraley's person and physically removed several of Officer Fraley's personal items. As he was removing Officer Fraley's badge, Mr. DeBow stated to Ms. Nuckolls and Sergeant McDaniel, "he will not be needing this." Officer Fraley was otherwise

---

[2] On October 11, 2017, the day before the Town Hall Meeting was to take place, Sergeant McDaniel directed Officer Fraley to carry his Department-issued firearm on his person at all times within Town limits, regardless of whether he was on light-duty status. Sergeant McDaniel's order was inconsistent with previous orders given to similarly situated officers and was issued to Officer Fraley for the purpose of ensuring that he would bring his Department-issued firearm to the Town Hall Meeting so that it could be confiscated.

physically barred from exiting the room and was further advised that if he did not comply with the polygraph examination, he would be immediately terminated. During the performance of the polygraph examination, Mr. DeBow asked questions of Officer Fraley that were ambiguous and specifically intended to induce a certain level of uncertainty in his answers.

64. These efforts, including the timing of the examination during his bereavement leave, were taken in a direct effort to unnerve Officer Fraley and to induce examination results showing indications of avoidance and/or evasiveness by Officer Fraley.

65. At the conclusion of the polygraph examination, Mr. DeBow advised Ms. Nuckolls that Officer Fraley had shown signs of deception in the examination. Upon hearing Mr. DeBow's findings, Ms. Nuckolls directed Sergeant McDaniel to present Officer Fraley with a Relief of Duty Notice; notably, this Notice had been prepared ahead of the Town Hall Meeting and was the only document Sergeant McDaniel brought to the meeting. **See Relief of Duty Memorandum attached hereto as Exhibit 14.** Officer Fraley was advised that he was now suspended from duty and that Sergeant McDaniel would be forwarding a recommendation of termination to Acting Chief Schroeck.

66. In fact, the results of Mr. DeBow's polygraph examination of Officer Fraley showed no signs of deception. Nevertheless, Mr. DeBow's report of these results instead reflected his pre-existing agreement with Ms. Nuckolls and the Town to create a mechanism by which Town officials could discredit Officer Fraley's integrity, honesty, and reputation as a law enforcement officer. Mr. DeBow's report initial oral report and subsequent written report intentionally misrepresented the results of the polygraph examination and failed to meet the professional standards promulgated by the Virginia Department of Professional and Occupational Regulation regarding polygraph examiners licensed in Virginia.

67. Evidence of the personal relationship between Mr. DeBow and Ms. Nuckolls was captured by the Town Hall elevator surveillance system only minutes after the conclusion of the Town Hall Meeting. **See elevator surveillance photos attached hereto as Exhibits 15a and 15b.**